**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

ROCKSTAR CONSORTIUM US LP AND
MOBILESTAR TECHNOLOGIES, LLC

                 Plaintiffs,

            v.

ASUSTEK COMPUTER, INC. AND
ASUS COMPUTER INTERNATIONAL

                 Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 13-cv-0894-JRG

**JURY TRIAL DEMANDED**

### DEFENDANTS' MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO STAY

## **Table of Contents**

INTRODUCTION ....................................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

       A.      Apple and Others Obtain the Asserted Patents and Form Rockstar entities ...........2

       B.      Rockstar Consortium US LP and MobileStar File This Action .............................3

       C.      Rockstar's Principal Place of Business is in Canada, Not Texas ..........................4

ARGUMENT ...........................................................................................................................5

I.     The Court Should Transfer to the Northern District of California ....................................5

       A.     This Action Could Have Been Filed in The Northern District of California...........6

       B.     Rockstar Has No Meaningful Connection to This Forum .......................................6

       C.     The Private Interest Factors Strongly Favor Transfer ...............................................7

                1.       Documentary Sources of Proof Are Primarily Located in and Around the Northern District of California ...............................7

                2.       The Cost of Attendance of Willing Witnesses in The Northern District of California is Lower Than in The Eastern District of Texas ...............................................................8

                3.       Availability of Compulsory Process Favors Transfer ...............................9

                4.       There Are No Practical Problems With Transferring This Case to The Northern District of California or, Alternatively, to the Western District of Washington ................................................11

       D.     The Public Interest Factors Similarly Favor Transfer or Are Neutral ..................11

                1.       The Northern District of California Have a Much Greater Interest in This Case ...........................................................11

                2.       The Remaining Public Interest Factors Are Neutral ................................12

       E.     This Court Has Recently Transferred Cases on Similar Facts ..............................12

II.    In the Alternative, the Court Should Stay This Action Pending Resolution of The Google Action ...................................................................................13

Conclusion ............................................................................................................................14

i

## Table of Authorities

**Page(s)**

### Cases

*Affinity Labs of Texas v. Samsung Electronics Co., Ltd.*
2013 WL 5508122 (E.D. Tex.) ............................................................... 13

*DataTern, Inc., v. Staples, Inc.*,
No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185 ...................... 16

*Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*,
No. 08-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008) ......................................... 15, 16

*In re Apple Inc.*,
456 F. App'x 907 (Fed. Cir. 2012) ........................................................... 7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ......................................................... 6, 7, 9

*In re Hoffman La-Roche, Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ........................................................ 10, 13

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011) ................................................................ 7

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ................................................................ 6

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) .............................................................. 14

*In re Volkswagen AG (Volkswagen I)*,
371 F.3d 201 (5th Cir. 2004) ................................................................... 9

*In re Volkswagen of America Inc. (Volkswagen II)*,
545 F.3d 304 (5th Cir. 2008) ................................................................... 6

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010) ......................................................... 7, 12

*Invensense, Inc. v. STMicroelectronics, Inc.*,
No. 13-cv-00405, 2014 WL 105627 (E.D. Tex. Jan. 10, 2014) ............. 12

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*,
No. 05-123, 2006 WL 2523137 (M.D. Fla. Aug. 30, 2006) ................... 16

*Microlinc, LLC v. Intel Corp.*,
No. 07-488, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ................... 17

*Microsoft Corp. v. Geotag Inc.*,
847 F. Supp. 2d 675 (D. Del. 2012) ....................................................... 15

*On Semiconductor Corp v. Hynix Semiconductor, Inc.*,
    No. 09-390, 2010 WL 3855520 (E.D. Tex. Sep. 30, 2010) ...................................................... 8

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*,
    No. 11-53, (E.D. Tex. Feb. 10, 2012), Dkt. No. 106 ................................................................ 8

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003) ........................................................................................ 16

*Southwire Co. v. Cerro Wire, Inc.*,
    750 F. Supp. 2d 775 (E.D. Tex. 2010) .................................................................................... 17

*Spread Spectrum Screening LLC v. Eastman Kodak Co*.,
    657 F.3d 1349 (Fed. Cir. 2011) ........................................................................................ 15, 16

*TransUnion Intelligence LLC v. Search Am., Inc.*,
    No. 10-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ...................................................... 13

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .................................................................................................................. 6

## INTRODUCTION

Plaintiffs are litigation entities created by Apple and others for the purpose of manipulating venue to attack Google's Android platform in this District. Such a litigation shell game should not be tolerated and this case should be transferred to the Northern District of California, where Google has already filed a declaratory judgment action putting the Android platform and the same asserted patents at issue.  Plaintiffs have made this case about Google and its Android platform because all of the Accused Products are those that have the Android platform.[1]  Recognizing Plaintiffs' collateral attack on its product through lawsuits against Google's OEM's, Defendant Google Inc. filed a declaratory judgment that its Android platform does not infringe the patents asserted here (*Google Inc. v. Rockstar Consortium US LP*, Case No. 13-cv-5833 (N.D. Cal. filed December 23, 2013)) (the "Google Action").

The accused Android platform is owned, designed and developed by Google, which is headquartered in Mountain View, California.  Asus's United States operations are based in the Northern District of California.  Moreover, Apple Inc., who contributed the majority of the funds to acquire the asserted patents and has material information relating to the value and scope of assertion of these patents, is also based in California. Thus, the vast majority of witnesses and evidence and the convenience of the parties, favors transfer to the Northern District of California.

Should the Court determine that transfer is not warranted, it should stay this case under

---

[1] *See e.g.* Complaint, Dkt. No. 1 ¶14 (identifying accused products as "certain mobile communication devices having a version (or an adaption thereof) of Android operating system ("ASUS Mobile Communication Devices")").  Rockstar has brought six other separate actions in this District against fifteen defendants for infringement of the same patents asserted against Asus based on defendants' sale of only mobile devices that use Google Android OS.  *See Rockstar Consortium US LP v. HTC Corp*., Case No. 13-cv-895, Dkt. No. 23 ¶ 15; *Huawei Investment & Holding Co., Ltd*., Case No. 13-cv-896, Dkt. No. 1 ¶ 22; *LG Electronics, Inc.*, Case No. 13-cv-898, Dkt. No. 1; *Pantech Co., Ltd*., Case No. 13-cv-899, Dkt. No. 9 ¶ 15; *Samsung Electronics Co., Ltd*., Case No. 13-cv-900, Dkt. No. 46 ¶¶ 25, 27; and *ZTE Corp*., Case No. 13-cv-901, Dkt. No. 29 ¶ 15.

the customer suit exception due to the pending Google Action in the Northern District of California ("NDCA").   Although Plaintiffs have moved to dismiss the Google Action, the NDCA has indicated that it would deny the motion without prejudice and permit 90 days of jurisdictional discovery.  The Google Action will at a minimum dispose of major questions at issue in this case, and will likely moot this litigation entirely.

Consequently, Defendants ASUSTeK Computer, Inc. and Asus Computer International (collectively, "Asus") hereby request that the Court to transfer this action to the NDCA, or, in the alternative, stay this action—which is targeted at features of the Android platform developed by Google—in light of Google's pending action.

## STATEMENT OF FACTS

### A.    Apple and Others Obtain the Asserted Patents and Form Rockstar entities

In January 2009, Nortel Networks and its affiliates (collectively "Nortel") filed for bankruptcy in Canada and the United States.  *See* Declaration of Harold H. Davis ("Davis Decl.") Exhibit 1 at ¶ 1.  In 2011, Nortel's patent portfolio, including the asserted patents, were auctioned.  *Id.* at ¶¶ 14-16.  Five "Qualified Bidders" submitted bids for Nortel's portfolio including - Ranger, Rockstar Bidco LP, Apple Inc., Intel, and Norpax LLC.  Rockstar Bidco LP was a consortium of five of the world's largest technology companies, including Google competitors, Blackberry, EMC, Ericsson, Microsoft, and Sony.  *Id.* at ¶ 17.  These companies, including Apple, were provided access to the "electronic data room, and completed further due diligence" on the Nortel Portfolio.  *Id.* at ¶ 18.

During the auction, Rockstar Bidco LP did not submit a bid after the fourth round of bidding and thus was not permitted to submit further independent bids.  *Id.* at ¶ 27.  Ultimately, in the nineteenth round of bidding, Apple, in partnership with Rockstar Bidco, submitted the winning bid of $4.5 billion for the Nortel portfolio. *Id.* at ¶¶28-29  According to its filings with

the Securities and Exchange Commission, Apple contributed "approximately $2.6 billion," or 58% of the total bid price.  Davis Decl. Exhibit 2 ("Madigan Declaration")[2] at Ex. 4 thereto. Presumably, the other companies comprising Rockstar Bidco contributed the balance.  Apple was responsible for contributing half of the "good faith deposit" upon submitting the winning bid in partnership with Rockstar Bidco.  Davis Decl. Ex. 1 at ¶ 34.  The Asset Purchase Agreement lists Rockstar Bidco LP, a Delaware Corporation, that was not registered in the state of Texas, as the "Purchaser" of the portfolio.  *Id.* (at Appendix B, p. 1).  The Asset Purchase Agreement was signed by Rockstar Bidco GP, LLC the purported "General Partner" of Rockstar Bidco, LP.  *Id.* Rockstar Bidco GP, LLC is also a Delaware Corporation that is not registered to do business in Texas. *See* Davis Decl. Exhibit 3.

To hold and assert these patents, Rockstar Bidco LP formed an interlocking and opaque network of companies including the two plaintiffs here, Rockstar Consortium US LP and MobileStar LLC (collectively, "Rockstar").  Madigan Decl. Exs. 1, 5-9.  Rockstar is admittedly a "patent licensing business" that produces no products and practices no patents. *Id.* at Ex. 10. Instead, Rockstar engineers examine other companies' successful products to develop infringement allegations, its licensing staff send demand letters to those companies, and Rockstar extracts licenses to its patents under threat of litigation.  Madigan Decl. at Exs. 1, 11.

### B.    Rockstar Consortium US LP and MobileStar File This Action

On October 30, 2013, Rockstar Consortium US LP formed a wholly owned subsidiary, MobileStar LLC ("MobileStar").  Madigan Decl. Ex. 8.  The next day, on October 31, 2013, Rockstar Consortium US LP transferred to MobileStar ownership of five of the seven patents in suit.  Madigan Decl. Ex. 12.  That same day, Rockstar filed this action and six others accusing

---

[2] All references to the "Madigan Decl." are contained in Exhibit 2 to the Davis Declaration.

Android OEMs of infringement by "certain mobile communication devices having a version (or an adaption thereof) of Android operating system" developed by Google.  *See e.g.*, Dkt. No. 22 ¶ 14. Although it is well-known that Google is the author of the Android platform, Rockstar chose not to sue Google itself.  *Id.*

On December 23, 2013, Google filed a declaratory action in the Northern District of California, seeking judgment that Android does not infringe the same patents. *See Google Inc. v. Rockstar Consortium US LP*, N.D. Cal. Case No. 13-5833, Dkt. No. 1.

### C.    Rockstar's Principal Place of Business is in Canada, Not Texas

Each of Rockstar Consortium US LP and MobileStar LLC claims to have "its principal place of business" in Texas.[3] Am. Compl. ¶¶ 1-2.  Rockstar's own public records, however, reveal that its principal place of business actually is in Ottawa, Canada.

First, and foremost, Rockstar Consortium US LP's Texas Franchise Tax records lists its mailing address as 515 Legget Dr. Suite, 300, Ottawa, Ontario, Canada.  Davis. Decl. Ex. 4.

Second, Rockstar's website lists addresses in Canada and Texas; Canada comes first, and has the only phone number (a Canadian number).  Madigan Decl. at Ex. 10.  The same website links to Rockstar's LinkedIn page, which lists Rockstar's Canadian address as its "headquarters." *Id.* Exs. 13-14.  Rockstar also lists its employees on LinkedIn; there are 32 of them, with only five in Texas.  *Id.* at Exs. 14-15. The bulk of Rockstar's employees, including its senior management, work in Ontario, Canada.  *Id.* at Ex. 16.  Of these ten members of Rockstar's senior management, five work in Canada; one each in California, Colorado, Massachusetts, New York, and Pennsylvania; and none in Texas.  *Id.* at Exs. 15-19.  In addition to its senior management,

---

[3] Rockstar Consortium US LP and MobileStar are both Delaware entities claiming their "principal place of business" at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, Texas.  (Dkt. No. 23 ("Am. Compl.") ¶¶ 1-2.)

Rockstar lists on its website six "Corporate Leaders," none of whom are from Texas.  *Id.* Ex. 20.
Moreover, MobileStar is nothing more than a corporate shell created the day before this suit was
filed for the purpose of holding ownership and licensing rights in some of the asserted patents.

Third, Rockstar's pre-suit communications confirm its Canadian nexus and lack of
connection to Texas.  Rockstar's initial correspondence to Asus was a letter that identified
Rockstar Consortium US LP as located at 300-515 Legget Drive, Kanata, Ontario, K2K 3G4
Canada.  Davis Decl. Ex. 5.  The letter was sent by Afzal Dean, who provided an office
telephone number, a mobile telephone number, and a facsimile number all in the 613 area code.
*Id.*  The 613 area code is for Ontario, Canada.  *Id*. This is consistent with a March 12, 2012, press
release that was sent with Mr. Dean's letter.  That Rockstar Consortium US LP news release has
an Ottawa, Canada dateline.  *Id.*

The patent assignment of four asserted patents from Rockstar Consortium US LP to
MobileStar further reveals Rockstar's true Canadian principal place of business.[4]  Madigan Decl.
Ex. 12.  On the same day this suit was filed, this transaction was executed by two members of
Rockstar's senior management, in Canada, and duly witnessed and notarized by Rockstar's
Canadian corporate counsel.  *Id.*  Indeed, MobileStar did not even register with the Texas
Secretary of State, as required by law, until more than a month later.  *See* Dkt. No. 15 and Case
No. 2:13-cv-900, Dkt. Nos. 26 and 33.

## ARGUMENT

### I.    The Court Should Transfer to the Northern District of California

The NDCA is clearly a more convenient forum than the Eastern District of Texas, thus

---

[4]  The following asserted patents were transferred in this transaction:  U.S. Patent No. 6,037,937
("the '937 Patent"); U.S. Patent No. 6,463,131 ("the '131 Patent"); U.S. Patent No. 6,765,591
("the '591 Patent"); U.S. Patent No. 6,937,572 ("the '572 Patent").

warranting transfer. 28 U.S.C. § 1404(a) (for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). In evaluating whether the proposed transferee forum is sufficiently more convenient, courts look to "private" and "public" interest factors. *In re Volkswagen of America Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). The law requires an "individualized, case-by-case consideration of convenience and fairness" to the parties, *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964), and forbids "treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer for the convenience of the parties." *In re Nintendo Co.*, 589 F.3d 1194, 1198, 1200 (Fed. Cir. 2009).

Here, Asus's US operations are in California, the accused instrumentality (the Android operating system) was authored by Google, who is based in California, Google has already filed a suit putting at issue the Android platform in California, and a critical witness, Apple, is also based in California.

### A.    This Action Could Have Been Filed in The Northern District of California

Asus is subject to jurisdiction in NDCA, thus this action "'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009); *see also* Declaration of Godwin Yan ("Yan Decl.") ¶¶ 4, 5, 8.

### B.    Rockstar Has No Meaningful Connection to This Forum

Although both Rockstar Consortium LP and MobileStar claim their "principal place of business" is in this District, the facts prove otherwise. (*See supra* Statement of Facts). Thus, transfer is appropriate. *See e.g. In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and stating that if "the record reveals attempts at manipulation" regarding the principal place of business, "take as the 'nerve center' the place of actual direction, control,

6

and coordination, in the absence of such manipulation."); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (noting that Courts should "ensure that the purposes of jurisdiction and venue laws are not frustrated by a party's attempts at manipulation," and finding the patentee's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation."). "Courts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'" *In re Apple Inc.*, 456 F. App'x 907, 908-09 (Fed. Cir. 2012).

**C.    The Private Interest Factors Strongly Favor Transfer**

      **1.    Documentary Sources of Proof Are Primarily Located in and Around the Northern District of California**

This factor turns on "which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *On Semiconductor Corp v. Hynix Semiconductor, Inc.*, No. 09-390, 2010 WL 3855520, at *2 (E.D. Tex. Sep. 30, 2010). Although relevant documents may be "spread throughout the country and the world," including in Texas, this factor still favors transfer to the NDCA because it is closer to most of Defendants' documents and, "typically in a patent case, the defendant has the majority of relevant documents." *Id.* Here, Asus's documents are managed and maintained in Taiwan and Freemont, California. Declaration of Godwin Yan ("Yan Decl.") ¶¶ 8-10; *see also* Declaration of Marvin Hsu ("Hsu Decl.") ¶¶ 8-10.

The documents of crucial third-party witness Google also are located in NDCA (Case No. 2:13-cv-894, Dkt. No. 52-29, Dubey Decl.), as presumably are those of Rockstar investor Apple, which is based in California. "The volume of physical evidence located in, or closer to, the transferee forum" is significant "especially when no physical evidence is located in Texas."

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*, No. 11-53, at 4 (E.D. Tex. Feb. 10, 2012), Dkt. No.

106.  The location of relevant documents favors transfer to the NDCA.

### 2.    The Cost of Attendance of Willing Witnesses in The Northern District of California is Lower Than in The Eastern District of Texas

Transfer to NDCA will serve the convenience of the witnesses, which is "probably the

single most important factor in transfer analysis."  *Genentech*, 566 F.3d at 1343.

ASUSTeK Computer Inc. is headquartered in Taiwan (Hsu Decl. ¶3) and ASUS

Computer International is headquartered in Freemont, California (Yan Decl. ¶4).    ASUS's

potential witnesses, specifically identified, are located in Taiwan and California, including

employees responsible for the research, design, development, marketing and sales of the accused

products.  Hsu Decl. ¶¶ 3, 8-10 and Yan Decl. ¶¶ 8-10.  There are no relevant ASUS documents

or employees in the Eastern District of Texas.  Hsu Decl. ¶ 10, Yan Decl. ¶¶ 9-12.

In addition, the bulk of the technology at issue is contained in the Android operating

platform.  The history of Android is rooted in the Northern District, including former Android

employees and executives responsible for the research, design, and development of the accused

features.  *See* Case No. 2:13-cv-894, Dkt. No. 52, Dubey Decl. at ¶¶ 3-9, 12.

NDCA is more than 100 miles from this District, so the "factor of inconvenience to

witnesses increases in direct relationship to the additional distance to be traveled."  *In re

Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 204-05 (5th Cir. 2004).  NDCA is a shorter

average travel distance for the vast majority of potential witnesses, including Google's witnesses

in California, Apple's witnesses in California, and ASUS's witnesses in Taiwan and California.

But the Court must consider not only average distance, but also travel time.  *See Id.* at 205 n.3.

This also favors transfer to NDCA.

Witnesses traveling to NDCA can fly into Oakland or San Francisco airports in less than

two hours, 10 and 25 miles from the courthouse hearing the Google Action in Oakland, California, while witnesses traveling to this Court must drive 170 miles from Dallas, or take a connecting regional flight into Shreveport and drive back 35 miles.[5]

Alternatively, the location of the relevant witnesses favors the NDCA over this District. ASUS's likely witnesses are located in Taiwan and California.  Hsu Decl. ¶¶ 9-10; Yan Decl. ¶¶ 8-12.  Finally, NDCA is more convenient for the prior art inventors, the Google witness, and the Apple witnesses, all of whom reside primarily in Northern California. *Id.*  By contrast, traveling from the Bay Area and Taiwan to Marshall, Texas is costlier and a greater inconvenience.

### 3.    Availability of Compulsory Process Favors Transfer

Although under the amended Federal Rule of Civil Procedure 45, both this Court and the Northern District may enforce a subpoena issued to any nonparty witness located outside of the district, the need for live testimony of potential third parties favors transfer.  *In re Hoffmann-La Roche Inc.*, 587 F. 3d 1333, 1338 (Fed. Cir. 2009) (ruling that transferee court with absolute subpoena power over third parties is a factor that favors transfer). Key third parties such as Google witnesses with knowledge of the Android platform, including former employees, remain heavily concentrated in the Northern District.  *See* Case No. 2:13-cv-894, Dkt. No. 52-29, Dubey Decl.  At least one named inventor resides in the Northern District, and dozens of relevant prior artists of record live in the Northern District.[6]

NDCA is also home to Apple witnesses whom ASUS has no control over.  Davis Decl. Ex. 1 at ¶ 30.  Apple witnesses and documents present in NDCA will figure prominently in this case.  During the bidding process for the Asserted Patents, Apple employees had an opportunity

---

[5] Witnesses traveling from Rockstar's Ottawa headquarters must travel a significant distance to either district and therefore do not affect the Court's venue consideration.  *Genentech*, 566 F.3d at 1344.

[6] Case No. 2:13-cv-894, Dkt. No. 52 (Jachlewski Decl. ¶ 3).

to review Nortel documents about the patents, and to place a value on each of the asserted patents.  *Id.* at ¶ 18.  The documents Apple reviewed and the valuations, along with Apple witnesses involved in the bidding process, will be important evidence in the case.  Apple's decision to purchase a controlling interest in the Nortel patents, but not purchase them outright, will also be key evidence likely going to the overall value of the patents, including each of the asserted patents.  Further, throughout the bidding process, Apple was represented by Kyle Krpata of Weil Gotshal & Manges in Redwood Shores, California, which is in NDCA.  Davis Decl. Ex. 6.

Rockstar has put at issue in this action the valuation of the entire portfolio auctioned by Nortel.  Should Rockstar introduce evidence of the value of Google's alleged bids on the total Nortel portfolio, Asus will require the Court's assistance in providing testimony from Apple. Moreover, Apple's evaluation of the value and the scope of the portfolio is relevant information that is discoverable by Asus.

In contrast, no relevant non-party witness appears to reside in the Eastern District.  None of the prosecuting attorneys on the asserted patents appear to reside here.  Case No. 2:13-cv-894, Dkt. No. 52 (Jachlewski Decl. ¶ 4).  It does not appear that a single inventor named on the asserted patents apparently resides in the Eastern District of Texas.  *Id.*  The sale of Nortel's patent portfolio took place in New York, in which Nortel was represented by New York attorneys.  *Rockstar v. Google*, No. 13-893 (E.D. Tex.), Docket No. 33-1 ¶ 14.  The former Nortel licensing executives involved in the sale and Rockstar's acquisition of the patents-in-suit reside in Canada and Massachusetts.  Madigan Decl. Exs. 24-25.  The Court should grant transfer where, as here, the present District "is convenient only for [plaintiff]'s litigation counsel."  *In re Zimmer Holdings, Inc*., 609 F.3d 1378, 1381 (Fed. Cir. 2010).

This Court cannot compel live testimony from this large number of out-of-state witnesses.  Defendants would be inconvenienced by being deprived the opportunity of presenting these non-party witnesses live.  Live witnesses are, in many circumstances, more dynamic and powerful.  Moreover, if the case is not transferred and Google remains in the case, Plaintiffs could compel live testimony on Google's valuation of the patents, but not live testimony from similarly situated Apple witnesses.  Forcing defendants to preemptively give up the opportunity to design its defense in offering live testimony is prejudicial.  Because Defendants do not have control over these non-party witnesses, this factor weighs heavily in favor of transfer.  *See Invensense, Inc. v. STMicroelectronics, Inc*., No. 13-cv-00405, 2014 WL 105627, at *6 (E.D. Tex. Jan. 10, 2014).

        **4.**        **There Are No Practical Problems With Transferring This Case to The Northern District of California or, Alternatively, to the Western District of Washington**

There are no practical problems with transferring the case.  This case is just beginning – ASUS has not answered, discovery has not started, and the parties have not exchanged initial disclosures or contentions.  *TransUnion Intelligence LLC v. Search Am., Inc.*, No. 10-130, 2011 WL 1327038, *5 (E.D. Tex. Apr. 5, 2011).

    **D.**      **The Public Interest Factors Similarly Favor Transfer or Are Neutral**

        **1.**        **The Northern District of California Have a Much Greater Interest in This Case**

The Android platform is at the core of Rockstar's claims. Dkt 22 at ¶14.   "The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley."  *Affinity Labs of Texas v. Samsung Electronics Co., Ltd,*. 2013 WL 5508122 (E.D. Tex.) The Northern District's local interest is even stronger, however, because this action "calls into question the work and reputation of several individuals

residing in or near that district and who presumably conduct business in that community." *In re Hoffman La-Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).   By contrast, this District's interest is much weaker.   Rockstar alleges only a single connection to this District, its asserted "principal place of business;" but its principal place of business is actually in Canada.   (*See supra* Statement of Facts).[7]   This factor favors transfer to NDCA.

### 2.      The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral.   All districts are familiar with and can apply the federal patent laws to this patent infringement case, and no conflict of laws problems are expected to arise in either district.   *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

### E.      This Court Has Recently Transferred Cases on Similar Facts

This Court has transferred cases under similar circumstances in at least three recent cases. *See e.g.  **Blue Spike, LLC v. Texas Instruments, Inc**.*, No. 12-cv-558 (E.D. Tex. Mar. 13, 2014), Dkt. No. 16, at pp. 5, 10 (granting Google motion to transfer to NDCA because 1) "the location of Defendant's sources of proof far outweighs the presence of Plaintiff's documents and servers in Texas"; and 2) compulsory process and the costs of attendance of attendance of witnesses favored transfer); ***Ingeniador, LLC v. Adobe Systems Inc***., No. 12-cv-805, 2014 WL 105106, *1-3 (E.D. Tex. Jan. 10, 2014) (granting transfer to NDCA even though some evidence was located in Texas, because most of the evidence and witnesses were located in the NDCA, and the inconvenience of a few Texas witnesses was outweighed by the "substantially increased convenience of witnesses in California" where most of the witnesses would come from); and

---

[7] Additionally, the allegedly infringing devices are "sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue."  *TS Tech*, 551 F.3d at 1321 (Fed. Cir. 2008).

*Touchscreen Gestures v. HTC*, No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17, at pp. 7, 10 (transferring case where a Texas LLC was formed shortly before filing a patent suit against an Android platform OEM and holding that Google's documents were more easily accessed in the NDCA, and that NDCA was a more convenient for Google witnesses).

Here, the grounds to transfer are just as compelling as in those cases, if not more so, because all or nearly all of Google's relevant witnesses and documents, Asus's US witnesses and documents, and Apple witnesses and documents are located in the NDCA.

## II.    In the Alternative, the Court Should Stay This Action Pending Resolution of The Google Action

Because the Google Action will answer many, if not all, of the central questions at issue here, the Court should stay this case and allow that action to proceed to judgment. In the interest of judicial efficiency and to guard against abuse, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F.3d 1349, 1357 (Fed. Cir. 2011). The manufacturer's case need not resolve every issue in the customer suits; it "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum*, 657 F.3d at 1358. The Google Action meets this test.

The Android platform originates with Google, which supervises "the design and production" of Android and is thus "in the best position to defend its own products." *Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, No. 08-11048, 2008 WL 2941116, at *5 (E.D. Mich. July 25, 2008); *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 681 (D. Del. 2012) (finding "the real dispute" was between the patentee and defendants Microsoft and Google, rather than customers who featured Microsoft and Google mapping services on their websites). The Google

13

Action should resolve "major issues" and will simplify this litigation, and may obviate the need for it altogether. *Spread Spectrum*, 657 F.3d at 1358; *DataTern, Inc., v. Staples, Inc.*, No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185 (staying customer suits in favor of declaratory judgment action brought by software developers in New York because "'in all likelihood [the New York cases] will settle many [issues] and simplify them all.'" (alterations in original).

At a minimum, the Google Action should resolve whether Google's Android operating system infringes the asserted patents, which "will efficiently dispose of the infringement issues" present in this case, *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003), and should promote judicial economy by encouraging "global" resolution rather than "piecemeal litigation." *Delphi Corp.*, 2008 WL 2941116 at *5; *Ricoh*, 279 F. Supp. 2d at 557 ("it is more efficient for the dispute to be settled directly between the parties in interest"); *see also Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, No. 05-123, 2006 WL 2523137, at *2 (M.D. Fla. Aug. 30, 2006) (stay will "preserve judicial resources, prevent duplicative expenses, and prevent the possibility of inconsistent judgments"). The Court should stay this action pending resolution of the Google Action.[8]

## CONCLUSION

For the foregoing reasons, ASUS respectfully requests that this Court transfer this case to the NDCA pursuant to 28 U.S.C. § 1404(a) or, in the alternative, stay this case pending resolution of Google Action.

---

[8] This Court should also stay this action under its inherent authority because this case is in its early stages, a stay will simplify the issues, and will not prejudice Rockstar. *See Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 778-80 (E.D. Tex. 2010). Rockstar is a non-practicing entity that can be fully compensated with damages. *Microlinc, LLC v. Intel Corp.*, No. 07-488, 2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010).

Dated:  March 25, 2014                    Respectfully submitted,

                                          */s/ Harold H. Davis*_____
                                          *Attorneys for Defendants ASUStek Computer, Inc.*
                                          *and ASUS Computer International*

                                          Harold H. Davis, Jr., *Lead Attorney*
                                          California Bar No. 235552 (admitted in E.D. Tex.)
                                            harold.davis@klgates.com
                                          Rachel Maire (Pro Hac Vice)
                                          California Bar No. 292952
                                            rachel.maire@klgates.com
                                          K&L GATES LLP
                                          Four Embarcadero, Suite 1200
                                          San Francisco, CA 94111
                                          Telephone: 415.882.8200
                                          Facsimile: 415.882.8220

                                          Steven G. Schortgen
                                          Texas State Bar No. 00794603
                                            steve.schortgen@klgates.com
                                          Jennifer Klein Ayers
                                           Texas State Bar No. 24069322
                                            jennifer.ayers@klgates.com
                                          K&L GATES LLP
                                          1717 Main St.
                                          Suite 2800
                                          Dallas, Texas  75201
                                          214.939.5500
                                          214.939.5849 Facsimile

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed.   Harold H. Davis, on behalf of counsel for Asus Defendants, conferred in good faith with Josh Budwin, counsel for Plaintiffs by telephone on March 25, 2014.  The parties reached an impasse when Plaintiffs' Counsel stated that it opposes Defendants' Motion to Transfer, or in the Alternative to Stay, leaving an open issue for the Court to resolve.

*/s/    Harold H. Davis*

Harold H. Davis

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Harold H. Davis*