IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> ASUSTEK COMPUTER, INC. and ASUS COMPUTER INTERNATIONAL, <br><br> *Defendants*. | § § § § § § § § § § § § § § § § CASE NO. 2:13-CV-00894-JRG <br><br> **LEAD CASE** |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants ASUStek Computer, Inc.'s and ASUS Computer International's (collectively, "ASUS") Motion to Transfer (Dkt. No. 41), filed March 25, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 67-47). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US

LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against ASUS on October 31, 2013, alleging that ASUS infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Dkt. No. 122).

In this motion, ASUS asks the Court to transfer this case to the NDCA. In the alternative, ASUS asks the Court to stay the case pending resolution of the NDCA suit.

## II. LEGAL STANDARDS

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a

district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

### III. TRANSFER

#### A. Availability of the Transferee Venue

The parties appear to agree that this suit could originally have been brought in the Northern District of California. ASUS is a Taiwanese entity with its principal United States headquarters in Freemont, California, in the NDCA. Accordingly, the case could have been brought in the Northern District of California. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

#### B. Private Interest Factors

##### 1. Relative Ease of Access to Sources of Proof

This being a patent case, it is likely that the bulk of the relevant evidence in this action will come from ASUS. *See In re Genentech*, 566 F.3d at 1345. ASUS "maintains its documents and information regarding its sales" in Freemont, but suggests that documents relating to the technical design of ASUS products are maintained in Taiwan (Dkt. No. 41-11). ASUS also

4

suggests that certain Google documents will prove relevant, but the Court has already found that there is no reason to believe that Google's documentary evidence is located on servers located at its Mountain View, California headquarters (Dkt. No. 122). Moreover, Rockstar's documentary evidence relating to the patents-in-suit is stored at its Plano, Texas headquarters—within the Eastern District of Texas (Dkt. No. 67-47).

The evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. Although some evidence relating to damages appears to be maintained in the Northern District of California, it also seems that the bulk of ASUS's evidence may come from Taiwan. The Court thus finds that this factor weighs against transfer. The Court notes, however, that given the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in its decision.

   *2. Availability of Compulsory Process*

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a); *Ingeniador, LLC v. Adobe Systems Inc.*, 2014 WL 105106, No. 2:12-cv-805-JRG (E.D. Tex. Jan. 9, 2014). Rule 45, however, makes compulsory process for deposition effectively nationwide. Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. *See Ingeniador*, *supra*. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

ASUS suggests that "[k]ey third parties such as Google witnesses with knowledge of the Android platform, including former employees, remain heavily concentrated in the Northern District. At least one named inventor resides in the Northern district, and dozens of relevant prior artists of record live in the Northern District" (Dkt. No. 41, at 9). They also suggest that employees of Apple, one of Rockstar's corporate owners, may be compelled to testify in the Northern District.

ASUS does not, however, identify any particular nonparty witnesses who are expected to testify at trial. Nor does the Court give particular credence to the assertion that prior artists will be called to testify; this Court has previously noted that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs., LLC v. Target Brands, Inc.*, No. 6:11-cv-655-LED, Dkt. No. 74, at 15 n.13 (E.D. Tex. Mar. 21, 2013). Finally, though the Court views ASUS's asserted interest in Apple's testimony with some skepticism, it notes that other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas (Dkt. Nos. 67-8, 67-9).

In contrast, Rockstar identifies two prosecuting attorneys and two former Nortel employees, in or near the Eastern District of Texas whom it suggests might be called to testify (Dkt. No. 67, at 9-10). It also suggests that ASUS customers such as AT&T and Verizon might be called to prove damages. *Id.* The Court is not convinced that any of these witnesses will likely be called to testify, but their appearance in the case is at least plausible.

Weighing all considerations of available compulsory process, the Court finds that this factor is neutral. One inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas.

*3. Cost of Attendance for Willing Witnesses*

The cost of attendance for willing witnesses is another key factor in the Court's analysis. As noted above, ASUS's global headquarters is in Taiwan, and its U.S. headquarters is in Freemont, California. Many of the ASUS employees with information relevant to this case are located in or near the Northern District of California; others are located in Taiwan (Dkt. No. 41-11). ASUS also suggests that Google witnesses from the Northern District of California would testify as willing witnesses at trial (Dkt. No. 41, at 8). Rockstar's headquarters is in Plano, Texas, and Rockstar has identified several potential witnesses who work at its Plano office (Dkt. No. 67, at 7).

ASUS employees from northern California would face substantial costs in traveling to the Eastern District of Texas for trial. However, if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses. ASUS witnesses located in Taiwan, by contrast, will be subjected to substantial costs in either venue.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for willing witnesses. *Cf. Thomas Swan & Co., Ltd. v. Finisar Corp.*, 2014 WL 47343, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). Having considered the evidence, the Court finds that this factor weighs slightly against transfer.

*4. Other Practical Problems*

In this case, where multiple and parallel litigations in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). These considerations weigh against a transfer.

There are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes save venue (Dkt. No. 31). The cases will present common issues of claim construction and damages, and (most likely) validity.

C. Public Interest Factors

1. *Local Interest*

ASUS argues that "[t]he Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley" (Dkt. No. 41, at 11) (quoting *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 2013 WL 5508122, No. 1:12-cv-557-RC (E.D. Tex. Sept. 18, 2013). The Court has previously been highly skeptical of arguments that a particular jurisdiction has a "local interest" that amounts to a bias in its jury pool. *See Ingeniador*, 2014 WL 105106, at *3-4. A predisposition toward one party, independent of the merits of the case, cannot be the kind of "local interest" cognized by the federal rules, and this Court gives this consideration no weight in its analysis. The Court finds that this factor is neutral.

2. *Other Public Interest Factors*

Both parties agree that other public interest factors are neutral. The Court sees no reason to disagree with this conclusion.

Having considered all appropriate factors, the Court finds that ASUS has not shown that it would be clearly more convenient to transfer this case to the Northern District of California. ASUS's request for a transfer must therefore be denied.

**IV. STAY**

In the alternative, ASUS suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. Nos. 67-27, 67-28). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 67-24). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 67, at 13). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

ASUS's request for a stay, then, should be denied.

### V.     CONCLUSION

The Court finds that the Northern District of California is not clearly a more convenient venue for this case. The Court also finds that a stay of proceedings would not serve the interests

of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 41) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

**Jul 28, 2014**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE