IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC,<br><br>   *Plaintiff*,<br><br>v.<br><br>ZTE CORPORATION, *et al.*,<br><br>   *Defendants*. | CASE NO. 2:13-CV-00894-JRG<br><br>**LEAD CASE**<br><br>CASE NO. 2:13-CV-00901-JRG<br><br>**MEMBER CASE** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants ZTE Corporation's, STE (USA) Inc.'s, and ZTE Solutions, Inc.'s (collectively, "ZTE") Motion to Transfer (Dkt. No. 44), filed March 28, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

    I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 46-51). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US

LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against ZTE on October 31, 2013, alleging that ZTE infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

In this motion, ZTE asks the Court to stay the case pending resolution of the NDCA suit. In the alternative, ZTE asks the Court to transfer this case to the NDCA.

II. **LEGAL STANDARDS**

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2)

3

the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

### III. STAY

ZTE suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. No. 46-22). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 46-16). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 1). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

ZTE's request for a stay, then, should be denied.

## IV. TRANSFER

To support its argument for transfer, ZTE relies on arguments set forth in other defendants' transfer motions in a related case (Dkt. No. 44, at 7). The Court has denied that motion (Case No. 2:13-CV-00894, Dkt. No. 122). To the extent that it makes any argument of its own, ZTE relies on the presence of Google witnesses in the Northern District of California as favoring transfer. ZTE does not mention the presence of its own likely witnesses at its U.S. headquarters in Richardson, Texas—within the Eastern District (Dkt. No. 46-7).

ZTE's barebones argument does not hold up against Rockstar's detailed analysis of the party and nonparty witnesses and evidence in this case. *See* Dkt. No. 45. The Court finds, having analyzed each of the private and public interest factors enumerated above, that ZTE has failed to carry its burden of proving that the NDCA is clearly a more convenient venue than this Court.

## V. CONCLUSION

The Court finds that a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved. The Court also finds that the Northern District of California is not clearly a more convenient venue for this case.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 35) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

**Jul 30, 2014**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE