IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHOLOGIES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> LG ELECTRONICS, INC., *et al.*, <br><br> *Defendants*. | CASE NO. 2:13-CV-00894-JRG <br><br> **LEAD CASE** <br><br> CASE NO. 2:13-CV-00898-JRG <br><br> **MEMBER CASE** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants LG Electronics, Inc.'s, LG Electronics U.S.A., Inc.'s, and LG Electronics Mobilecomm USA Inc.'s (collectively, "LG") Motion to Transfer (Dkt. No. 35), filed March 25, 2014. For the reasons set forth below, the Court finds that the motion should be **DENIED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Rockstar Consortium US LP, Inc. and Mobilestar Technologies, LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company with a substantial patent portfolio. When Nortel confronted bankruptcy in 2011, it held an auction for its patents. Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of purchasing the Nortel patent portfolio at auction (Dkt. No. 38-8). Rockstar Bidco LP then transferred the patents in suit here to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in

1

Plano, Texas and one of the plaintiffs in this case. *Id.* Rockstar Consortium US LP subsequently created a wholly-owned subsidiary, MobileStar Technologies, LLC, to which it assigned five of the seven patents-in-suit. *Id.* Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. *Id.* Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for "intellectual-property-support services." *Id.*

Rockstar Consortium US LP, Inc. and MobileStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against LG on October 31, 2013, alleging that LG infringes seven of Rockstar's patents, accusing certain mobile phones using a version of Google, Inc.'s ("Google") Android operating system (Dkt. No. 1). On the same day, Rockstar separately sued six other mobile phone manufacturers, again accusing Android-based phones.

On December 23, 2013, Google filed an action for declaratory relief in the United States Court for the Northern District of California (NDCA), seeking a judgment that the Android operating system does not infringe the patents at issue in this case. *Google Inc. v. Rockstar Consortium U.S. LP*, No. C-13-5933-CW (Dkt. No. 1). On July 1, 2014, this Court denied a motion in a related case to stay the case pending resolution of the *Google* case or to transfer that case to the NDCA (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

In this motion, LG asks the Court to stay the case pending resolution of the NDCA suit. In the alternative, LG asks the Court to transfer this case to the NDCA.

## II. LEGAL STANDARDS

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). In deciding whether to stay litigation, courts typically consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.*

When cases between the same parties present the same issues for resolution, the general rule favors the first-filed action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). However, "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency . . . . These exceptions are not rare." *Id.* In particular, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 f.2d 1459, 1464 (Fed. Cir. 1990)).

28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The private factors include: (1) the relative ease of access to sources of proof; (2)

3

the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

### III. STAY

LG suggests that the Court stay proceedings in this case pending resolution of the *Google* litigation in the Northern District of California. The Court does not expect the current California litigation to dispose of key issues in this case and the other related Rockstar litigations. *See Spread Spectrum*, 657 F.3d at 1358. Though the patents-in-suit in the Texas litigations are the same, the suits' accused products are importantly different. Though each of the accused products uses some version of Android, a product driven primarily by Google, each defendant mobile phone manufacturer modifies and customizes the Android system to its own particular purposes (Dkt. No. 39-7). It is by no means clear, then, that resolving infringement issues as to Android *proper* will resolve issues relating to other manufacturers' various *implementations* of the Android system. These specialized implementations place these suits far outside of the usual "customer suit" exemption from the first-filed rule. *See Spread Spectrum*, 657 F.3d at 1358.

The Texas litigations also present issues relating to each phone manufacturer's devices and hardware, as the California litigation does not. One of the patents-in-suit claims only hardware (Dkt. No. 39-5). Rockstar alleges that the other patents-in-suit cover the interaction of the parties' Android implementations with hardware (Dkt. No. 1). Thus, only if the patents are *invalidated* completely in the California court will major issues in the Texas cases be resolved.

LG's request for a stay, then, should be denied.

## IV. TRANSFER

### A. Availability of the Transferee Venue

The parties agree that this suit could originally have been brought in the Northern District of California. The LG subsidiary responsible for importing and selling the accused products maintains its headquarters in San Diego, California. LG also maintains an office in San Jose, California, in the NDCA. Accordingly, the case could have been brought in the Northern District of California. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

### B. Private Interest Factors

#### 1. *Relative Ease of Access to Sources of Proof*

This being a patent case, it is likely that the bulk of the relevant evidence in this action will come from LG. *See In re Genentech*, 566 F.3d at 1345. LG avers that "[d]ocuments and records relating to LG-branded Android Products, such as sales agreements, marketing documents and marketing strategy reports, are either physically present or electronically accessible at the San Diego office" in the *Southern* District of California (Dkt. No. 34-13). Because modern document production is done electronically, there is no practical difference between the burden of producing documents from the Southern District of California to the NDCA and that of producing them to the Eastern District of Texas. Furthermore, LG's affidavit

in support of this motion pointedly does *not* make firm representations about the physical locations of its data (Dkt. No. 36). Rockstar, in contrast, avers that documentary evidence relating to the patents-in-suit is stored at its Plano, Texas headquarters—within the Eastern District of Texas (Dkt. No. 38-8). LG also suggests that Google retains documentary evidence at its headquarters in Mountain View, California, but the Court has already rejected that claim as insufficiently supported by evidence (Case No. 2:13-CV-00894-JRG, Dkt. No. 122).

The evidence supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. The location of LG's documentary evidence is unclear, and, to the extent that the data is in San Diego, that data would be insubstantially more difficult to produce in this Court than the NDCA. The Court thus finds that this factor weighs against transfer. The Court notes, however, that given the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in its decision.

*2. Availability of Compulsory Process*

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a); *Ingeniador, LLC v. Adobe Systems Inc.*, 2014 WL 105106, No. 2:12-cv-805-JRG (E.D. Tex. Jan. 9, 2014). Rule 45, however, makes compulsory process for deposition effectively nationwide. Moreover, party witnesses do not require compulsory process for trial and are not given much

weight in this factor. *See Ingeniador*, *supra*. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

LG suggests that the case will require compulsory process for Google and Apple, Inc. witnesses and documents in or near Mountain View, California, and Cupertino, California, respectively. "[a]t least one named inventor resides in the [NDCA] . . . and dozens of relevant prior artists of record live in the [NDCA]" (Dkt. No. 35, at 13).

LG does not, however, identify any particular nonparty witnesses who are expected to testify at trial. Nor does the Court give particular credence to the assertion that prior artists will be called to testify; this Court has previously noted that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs., LLC v. Target Brands, Inc.*, No. 6:11-cv-655-LED, Dkt. No. 74, at 15 n.13 (E.D. Tex. Mar. 21, 2013). Finally, though the Court views LG's asserted interest in Apple's testimony with some skepticism, it notes that other Rockstar parents—notably Ericsson and Blackberry—maintain U.S. headquarters in Texas (Dkt. Nos. 39-12, 39-13).

In contrast, Rockstar identifies two prosecuting attorneys and two former Nortel employees, in or near the Eastern District of Texas whom it suggests might be called to testify (Dkt. No. 37, at 11-12). It also suggests that LG customers such as AT&T and Verizon might be called to prove damages. *Id.* The Court is not convinced that any of these witnesses will likely be called to testify, but their appearance in the case is at least plausible.

Weighing all considerations of available compulsory process, the Court finds that this factor is neutral. One inventor's presence in the Northern District of California weighs in favor of transfer, but is counterbalanced by the presence of several potential nonparty witnesses in Texas.

*3. Cost of Attendance for Willing Witnesses*

The cost of attendance for willing witnesses is another key factor in the Court's analysis. LG argues that its employees in San Jose, California and San Diego, California, will be relevant, but makes no particular assertions about its likely witnesses.[1] LG also suggests that Google witnesses from the Northern District of California would testify as willing witnesses at trial (Dkt. No. 35, at 9). Rockstar's headquarters is in Plano, Texas, and Rockstar has identified several potential witnesses who work at its Plano office (Dkt. No. 35, at 7-8).

LG employees from San Diego and San Jose would face somewhat lower costs in traveling to the NDCA rather than the Eastern District of Texas for trial. However, if the court were to transfer this case, roughly equivalent costs would be imposed on Rockstar's witnesses. LG witnesses located overseas, by contrast, will be subjected to substantial costs in either venue.

Transferring this case would, at best, merely redistribute the inconvenience of travel among the parties; at worst, a transfer might substantially increase the cost of attendance for willing witnesses. *Cf. Thomas Swan & Co., Ltd. v. Finisar Corp.*, 2014 WL 47343, No. 2:13-cv-178-JRG (E.D. Tex. Jan. 6, 2014). Having considered the evidence, the Court finds that this factor weighs slightly against transfer.

*4. Other Practical Problems*

In this case, where multiple and parallel litigations in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis. *See In re*

---

[1] The Court notes that neither of LG's two US-based entities appear to design or manufacture the accused products. Common sense suggests that some LG witnesses might be traveling from overseas, which would make travel to this Court only marginally more inconvenient for those witnesses than a trip to the NDCA.

*Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). These considerations weigh against a transfer.

There are six Rockstar litigations currently proceeding in the Eastern District of Texas, each suit alleging violations of the same patents. The Court has already consolidated these cases for all pre-trial purposes save venue (Dkt. No. 32). The cases will present common issues of claim construction and damages, and (most likely) validity.

C. <u>Public Interest Factors</u>

   *1. Local Interest*

LG argues that "'the [NDCA] has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley'" (Dkt. No. 35, at 14 (quoting *Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*, No. 12-CV-557-RC (E.D. Tex. Sept. 18, 2013))). Rockstar also suggests that its location in the Eastern District of Texas should lead the Court to find a specialized local interest in resolving the case (Dkt. No. 37, at 14-15). The Court has previously been highly skeptical of arguments that a particular jurisdiction has a "local interest" that amounts to a bias in its jury pool. *See Ingeniador*, 2014 WL 105106, at *3-4. A predisposition toward one party, independent of the merits of the case, cannot be the kind of "local interest" cognized by the federal rules, and this Court gives this consideration no weight in its analysis. The Court finds that this factor is neutral.

   *2. Other Public Interest Factors*

Both parties agree that other public interest factors are neutral. The Court sees no reason to disagree with this conclusion.

Having considered all appropriate factors, the Court finds that LG has not shown that it would be clearly more convenient to transfer this case to the Northern District of California. LG's request for a transfer must therefore be denied.

V. **CONCLUSION**

The Court finds that a stay of proceedings would not serve the interests of justice, because major issues in this case and other pending cases will likely remain even after the California litigation is resolved. The Court also finds that the Northern District of California is not clearly a more convenient venue for this case.

Having considered the matter carefully, the Court finds that Defendants' motion (Dkt. No. 35) should be and hereby is **DENIED**.

**So Ordered and Signed on this**

**Jul 30, 2014**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE